*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re STROUSE, Minors.

UNPUBLISHED
May 12, 2025
11:47 AM

No. 372806
Muskegon Circuit Court
Juvenile Division
LC No. 19-000032-NA

Before: O'BRIEN, P.J., and K. F. KELLY and BORRELLO, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to the minor children, RS, JS, AS, and KS, asserting that the trial court considered inadmissible evidence and erred in its best-interest analysis, and that defense counsel was ineffective. For the reasons set forth in this opinion, we vacate the trial court's order and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

In October 2022, the minor children were removed from their home[1] and placed in protective custody due to allegations that respondent-father sexually assaulted AS. Furthermore, both parents were accused of failing to provide a fit home environment. Throughout these proceedings, respondent-father insisted that he was not residing with respondent-mother; however, evidence suggested that this assertion may have been inaccurate.

Upon the entry of Children's Protective Services (CPS) into respondents' residence in 2022, numerous concerning conditions were observed, including a pervasive odor of decomposing meat, the presence of trash, dirty dishes, and old food on the kitchen counters, overcrowded living conditions with an accumulation of trash bags and clothing, and inadequate sleeping arrangements. Respondent-mother's residence was noted to contain rodent droppings in both the cupboards and on the counters. Despite previously housing ten cats, along with rabbits and dogs (later reduced to

---

[1] RS and JS were placed together while AS and KS were placed in a separate location.

three cats and one dog), the premises exhibited significant clutter, animal droppings, and a strong odor of cat urine. Similarly, respondent-father's claimed residence was found to be uninhabitable, characterized by excessive refuse, unusable bathrooms, one toilet containing black sludge, and used sanitary napkins strewn across one bathroom. Rabbit pellets were also observed throughout the floor of the residence. In June 2023, respondent-father entered a plea of admission to an amended petition regarding the unsuitability of respondents' housing conditions, while denying the allegations of sexual assault against AS.

On June 6, 2023, petitioner submitted an amended petition asserting that jurisdiction was warranted under MCL 712A.2(b)(1) (neglecting or refusing to provide necessary support, education, medical, surgical, or other care) and MCL 712A.2(b)(2) (an unfit home environment owing to neglect, cruelty, substance abuse, criminal behavior, or depravity). Petitioner therefore sought termination of respondent-father's parental rights. This amended petition also included allegations from a 2019 case, which documented that respondents' home had been infested with lice, bedbugs, and other insects. Additionally, it was noted that KS had sustained severe diaper rash that resulted in bleeding. There were allegations that respondents had previously faced substantiated allegations of neglect on five occasions. For example, in 2018, respondents relocated to a residence devoid of essential services such as heat, water, and cooking facilities, and the premises were infested with dead insects; during this time, all children demonstrated neglected hygiene for over six months. This case was ultimately closed after substantial services were rendered.

Testimony presented at the termination hearing in September 2024 established that respondent-father had made insufficient progress in addressing the barriers to reunification over the preceding two years. Furthermore, there were no prospective adoptive families identified for the children at that time. Consequently, the trial court terminated respondent-father's parental rights, concluding that the statutory grounds for termination were satisfied under MCL 712A.19b(3)(c)(i) (more than 182 days had elapsed, and the conditions for adjudication persisted). The court also determined that terminating parental rights was in the best interests of the children.

Regarding the best-interest analysis, the trial court stated the following:

There is no immediately identified permanent placement for these children, but they are now in a position to be adopted or brought into a family where their physical and intangible environment will be fit for their opportunities to thrive and as young children headed into their adolescence, headed into their adulthood.

With the statutory grounds and best-interest grounds for termination both being met, the trial court entered an order terminating respondent-father's rights consistent with the court's findings. Respondent-father now appeals.[2]

---

[2] The trial court also terminated the parental rights of respondent-mother in this matter; however, she is not a party to this appeal.

## II. STATUTORY BASIS

Although respondent-father first raises various arguments related to the admissibility of AS's allegations regarding respondent-father's sexual abuse, we find no outcome-determinative error.

"[R]eview of unpreserved issues in termination cases is for plain error affecting substantial rights." *In re MJC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 365616); slip op at 2. See also *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 294 n 3; 14 NW3d 472 (2023).

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings. The party asserting plain error bears the burden of persuasion with respect to prejudice. [*In re MJC*, ___ Mich App at ___; slip op at 2 (quotation marks and citations omitted).]

We review for clear error the trial court's ruling that a statutory ground for termination of parental rights has been established by a clear and convincing evidence. *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020). "If the trial court did not clearly err by finding one statutory ground existed, then that one ground is sufficient to affirm the termination of respondent's parental rights," assuming that the trial court did not clearly err with regard to the best-interest-of-the-child analysis. *In re Sanborn*, 337 Mich App 252, 273; 976 NW2d 44 (2021), citing *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009). See also *In re Mota*, 334 Mich App at 320. "A circuit court's decision to terminate parental rights is clearly erroneous if, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003).

The trial court terminated respondent-father's parental rights, in part, pursuant to MCL 712A.19b(3)(c)(*i*). That provision states in relevant part as follows:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> \* \* \*
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order,[3] and the court, by clear and convincing evidence, finds either of the following:

---

[3] The initial disposition for respondent-father occurred in July 2023, and the termination occurred in September 2024. Therefore, 182 or more days (i.e., six months) elapsed between disposition and termination.

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

The record in this case indicates that the conditions of all relevant residences were consistently unsuitable throughout the duration of the proceedings. Respondent-father admitted to an amended petition concerning the inappropriateness of the respondents' living situations. Regardless of whether respondent-father resided separately, as he asserted, or lived with respondent-mother during that time, all residences examined were deemed unfit for the children. Respondent-father failed to present any evidence rebutting the unsuitable condition of his residence.

On this record, we conclude that the trial court did not err in finding that the conditions that led to adjudication persisted and that there was no reasonable likelihood of rectification within an appropriate timeframe given the ages of the children. The primary issue leading to adjudication was the unsuitability of respondents' domiciles. Whether evaluating the living conditions of respondent-mother or respondent-father, both remained inadequate for the children's welfare. Considering that these inappropriate housing conditions were present throughout the entirety of the proceedings, and that such conditions had plagued respondent-father in the past, there was no reasonable expectation that they could be remedied in a timely manner. Consequently, the trial court did not clearly err in its decision to terminate respondent-father's parental rights under MCL 712A.19b(3)(c)(i).

Moreover, a trial court is required to find only that one of the statutory grounds for termination in MCL 712A.19b(3) has been satisfied by clear and convincing evidence. As noted in *In re Sanborn*, 337 Mich App at 273, it is unnecessary to address respondent-father's arguments regarding the admissibility of AS's allegations, as their admission did not affect the outcome. See also, *In re MJC*, ___ Mich App at ___; slip op at 2.

## III. BEST INTERESTS OF THE CHILDREN

Respondent-father asserts that the trial court's assessment of the children's best interests relied on inadmissible evidence concerning the alleged sexual assault of AS. He further maintains that the separate placement of the children fails to satisfy the permanency criterion within the best-interest analysis. Additionally, he argues that the trial court neglected to adequately consider the pertinent best-interest factors. Considering these concerns, we conclude that the trial court's lack of sufficient findings on the best interest factors constituted clear error.

We employ the clear-error standard when reviewing a trial court's determination that petitioner has proved by a preponderance of the evidence that termination of parental rights was in the child's best interests. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013); *In re Olive/Mett Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A circuit court's decision to terminate parental rights is clearly erroneous if, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re JK*, 468 Mich at 209-210.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App at 40. "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). The trial court is to examine the best interests of the child, not the parent. *In re Moss*, 301 Mich App at 87. "[T]he trial court has a duty to decide the best interests of each child individually." *In re Olive/Metts Minors*, 297 Mich App at 42. Various factors the trial court may consider include: the child's bond to the parent, *id*. at 41-44; the parent's parenting abilities, *In re Jones*, 286 Mich App 126, 129-130; 777 NW2d 728 (2009); and the child's need for permanency, stability, and finality, *In re Gillespie*, 197 Mich App 440, 446-447; 496 NW2d 309 (1992). The trial court may also consider the following: the parent's history and psychological evaluation, and the age of the child, *In re Jones*, 286 Mich App at 131; a parent's substance-abuse history, *In re Rippy*, 330 Mich App 350, 361; 948 NW2d 131 (2019); whether the parent can provide a permanent, safe, and stable home, *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012); and "the parent's compliance with his or her case service plan, the parent's visitation history with the child, the [child's] well-being while in care, and the possibility of adoption," *In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014) (quotation marks and citations omitted). "Brief, definite, and pertinent findings and conclusions on contested matters are sufficient." MCR 3.977(I)(1).

The record makes clear that the trial court failed to conduct a thorough and individualized assessment of what would be in the best interests of each child involved in this case. Instead of engaging in a comprehensive evaluation, the court primarily centered its attention on the notion of "permanency" in a general sense while overlooking other essential factors that are vital in determining the best interests of the children. The trial court's oversight is further compounded by the record's indication that, at the time of considering the termination of parental rights, there were no identified prospective adoptive families available for the children. This lack of potential placement options becomes particularly concerning since the children were residing in different foster placements, each with their unique circumstances and needs.

The absence of a specific best-interest analysis for each child undermines the individualized approach that is crucial in matters involving termination of parental rights. Consequently, we find it necessary to vacate the trial court's order that terminated the respondent-father's parental rights. We remand the case back to the trial court to conduct a comprehensive evaluation of the best-interest factors pertinent to each child individually, considering their unique backgrounds, needs, and futures.

IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Respondent-father argues that defense counsel was ineffective for failing to advocate for the restoration of respondent-father's parenting time, failing to object to hearsay evidence regarding AS's allegations, and failing to seek admission of respondent-father's Abel Assessment for Sexual Interest results.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "The

trial court must first find the facts and then decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel. The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004) (citations omitted). However, when "claims of ineffective assistance of counsel have not been preserved," or when no hearing was held in the trial court, our "review is limited to errors apparent on the record." *Id*.

For a successful claim of ineffective assistance of trial counsel, it must be established that "(1) counsel's performance was deficient, falling below an objective standard of reasonableness, and that (2) the deficient performance prejudiced the respondent." *Id*. Namely, the respondent must show that, " 'but for counsel's deficient performance, there is a reasonable probability that the outcome of the [respondent's] trial would have been different.' " *In re Casto*, 344 Mich App 590, 612; 2 NW3d 102 (2022), quoting *People v Ackley*, 497 Mich 381, 388-389; 870 NW2d 858 (2015). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Ackley*, 497 Mich at 389, quoting *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "The effective assistance of counsel is presumed, and a party claiming ineffective assistance bears a heavy burden of proving otherwise." *In re Casto*, 344 Mich App at 612. "Generally, attorneys are given broad latitude to determine trial strategy, and there is a strong presumption that counsel's performance was born from sound strategy. However, counsel's strategic decisions must be objectively reasonable." *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023), citing *Strickland*, 466 US at 689-690 and *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012).

Respondent father's opportunity for parenting time was suspended throughout the duration of this case, initially as a direct consequence of allegations of sexual abuse made by AS. Following the investigation, the criminal charges levied against the respondent father were ultimately dismissed; however, in June 2023, he entered a plea of admission concerning the state of his living conditions, explicitly disassociating this plea from AS's allegations of abuse. Despite the dismissal of the charges and the plea regarding housing, the court continued to deny the respondent father any parenting time with his child. Moreover, respondent father has consistently failed to meet the critical second prong of the *Strickland* test. This test requires the establishment of prejudice significant enough to suggest that the substandard performance of his legal counsel would have altered the outcome of his termination hearing. He has not presented sufficient evidence to demonstrate that any of his three claims of ineffective assistance of counsel impacted the final determination of his case regarding the loss of his parenting rights.

Respondent-father alleges that trial counsel's failure to object to AS's serious and unchecked allegations coupled with the failure of trial counsel to introduce findings from the Abel Assessment, led the trial court to terminate his parental rights based on ineffective assistance of counsel. Even if we were to presume that trial counsel was ineffective for the reasons stated, respondent-father fails to provide any evidence that such failure to object caused him prejudice. While respondent-father focuses his appeal complaining of trial counsel's failures relative to AS's sexual assault complaints, respondent-father's arguments are woefully deficient because the trial court terminated his parental rights under MCL 712A.19b(3)(c)(i). This decision was rooted in the stark reality of the respondent-father's living arrangements, which were deemed unsuitable, rather than any insinuations of sexual abuse. Consequently, respondent-father has been unable to demonstrate how his trial counsel's failure to object to the inclusion of these abuse allegations, or

requests to present the assessment results, would have changed the outcome of the case. *In re Casto*, 344 Mich App at 612. Ultimately, respondent-father has not substantiated any claim that the proceedings would have concluded differently under other circumstances. See *id*.

Vacated and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello